## CIRCUIT COURT OF HENRICO COUNTY

Patricia Boykin

v.

Leon Phillips

July 13, 1981

Case No. 81-M-94

By JUDGE BALLARD BAKER

This is a child support complaint filed by Patricia Boykin, a New Jersey resident, against Leon Phillips, alleging that Phillips is the father of Rahiem Leon Boykin, born December 31, 1979. She seeks to have paternity established and a support order entered, and is proceeding under the Revised Uniform Reciprocal Enforcement of Support Act. (URESA, V.C. § 20-88.12 -- § 20-88.31).

The Juvenile and Domestic Relations Court found paternity established and set support at $130.00 per month. Appeal was taken by Phillips. Evidence was heard on June 1, 1981 and counsel were given an opportunity to file authorities.

At the hearing, Boykin said Phillips was the father; Phillips said he was not. Dr. Ali Hossani, Director of the Paternity Testing Lab at the Medical College of Virginia, testified that based upon the

blood grouping test he had performed on the parties and the child, the chances were 16 to 1 that Phillips was the father. He converted this to a 94.23% probability. None of the eight tests performed excluded Phillips.

The blood grouping test was performed pursuant to § 20-61.2, under order of the Juvenile Court. The major issue is whether the test result is properly ordered and the results received.

Under URESA, § 20-88.26:1 allows the responding state to ". . . adjudicate the paternity issue within the same limits as provided in § 20-61.1".

Section 20-61.1 limits the nature of the evidence which may be considered in determining paternity in proceedings under Chapter 5 of Title 20. It does not include the blood test procedure. URESA is not in Chapter 5.

As noted, § 20-61.2 permits a blood grouping test and does so "In the trial of any divorce or support proceedings in any court in which the question of paternity arises. . ." This section goes back at least to 1966 (Acts of General Assembly, 1966, Chapter 517), and for many years was in the Code as § 8-329.1. In the 1977 revision of Title 8, the section became 20-61.2. (Acts 1977, Chapter 624, p. 1227). The Report of the Code Commission, Revision of Title 8, indicates that it transferred 8-329.1 to Title 20, but does not give any reason.

If the Court is limited to the evidence permitted in a proceeding governed by 20-61.1, Boykin cannot prevail. If the blood grouping test of 20-61.2 can be required and the results considered, then Boykin can prevail.

While the case is brought in the name of the mother, it is the right of the child to support that is involved, and this Court considers the case in that light.

At the outset, it is observed that URESA does not by its language limit the civil child support right to legitimate children. Its reference to § 20-61.1 may give rise to the argument that it is intended to be limited to the same type case, but to limit it to such raises a constitutional issue commented on hereafter.

Section 20-88.26:1 in URESA refers to determination of paternity ". . . as provided in section 20-61.1". This particular section (20-88.26:1) came into the law in 1970, (Acts 1970, Chap. 669, p. 1482), at which time the original URESA law was amended. Section 8-329.1, which is now 20-61.2, was in the Code in 1970, and the General Assembly could have had 20-88.26:1 include it as well as 20-61.1. The failure of the legislature to do this seems to preclude this Court from giving a liberal interpretation of 20-88.26:1 to include 20-61.2 (or what was 8-329.1 in 1970). This, I think is true despite § 20-88.18.

That, however, does not resolve the issue. Under a series of Supreme Court cases, it is this Court's view that the right of an illegitimate child to support under the law of Virginia cannot be less than the right of a legitimate child. Levy v. Louisiana, 391 U.S. 68 (1968); Gomez v. Perez, 93 S.Ct. 872 (1973). Nor can Virginia deny to a non-resident child the same rights it affords to a resident child with respect to support from its parents. Art. IV, section 2, Constitution of the United States; 16A Am. Jur. 2d, Constitutional Law, sect. 730.

In Gomez, the Supreme Court held

. . . that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. (93 S. Ct. at 875).

Virginia does have a judicially enforceable right of a child with respect to support from its natural father. This right is not limited to the criminal sanctions of § 20-61. Juvenile courts have jurisdiction in this field in civil proceedings, (§ 16.1-241), as do Circuit courts in divorce matters, (§ 20-107). Virginia also affords this right to non-resident children under URESA, sections 20-88.12 to 20-88.31.

Involved here is not whether Virginia gives a civil support right to illegitimate children as required by Gomez. Virginia must. The issue here is whether an evidentiary procedure permitted in Virginia by § 20-61.2 applies to a civil support case involving an illegitimate child, whether she be resident or non-resident. Is § 20-61.2 limited to cases involving legitimate children, and, if so, is such limitation constitutional?

In my judgment, the answer to each question is No.

Nothing in 20-61.2 says that only children born in wedlock, or born of a married woman, may have the blood grouping test. The test is permitted in ". . . the trial of any divorce or support proceeding. . ." While a divorce proceeding requires an existing marriage, a support proceeding can involve unwed parties, as in this case.

The right to have the blood grouping test, like the civil support remedy given by URESA, is not limited by its language to legitimate children. To say that it must be construed to apply to legitimate children only is to say that, in some cases, the outcome of the test determines the right to have it performed, which would be somewhat odd.

It may be argued that 20-61.2 is to apply only to children born in wedlock or born of a married woman, but not to support cases such as this where there is no marriage. Construed in this way means an evidentiary right would be given to a child whose

mother was married but not given to a child whose mother was not married. While this is not what Gomez specifically disallows, it is not consistent to say that a state, having given a right to support to one class of children which must also be given to another class or be unconstitutional, can give an evidentiary aid such as 20-61.2 to the one class and not allow the same aid to the other.

The same reasoning requires rejection of the argument that the reference in 20-88.26:1 to 20-61.1 limits URESA civil child support actions to the same class of children or same type of case contemplated by 20-61.1. Virginia, having given a civil support right to resident children, legitimate or illegitimate, cannot discriminate between non-resident legitimate and illegitimate children with respect to a civil support right. If that be true, as it must under Gomez and the Constitution, it is inconsistent to say resident children have an evidentiary right that non--resident children of unwed mothers cannot enjoy.

It is the right of the child that is crucial, and that is protected by the Constitution.

It is also true that 20-61.2 may work in favor of the alleged father; and to limit its application is to deny some fathers a procedure allowed to others.

It must be kept in mind that 20-61.2, while placed next to 20-61.1 in the 1977 Code revision, is applicable in civil proceedings, while 20-61.1 is a criminal section.

While Brown v. Comm., 218 Va. 40, says that 20-61.1 ". . . expressly applies to proceedings instituted under Chapter 5 of Title 20 of the Code of Virginia dealing with desertion and nonsupport and is designed to require support of children of 'unwed parents by the father'." this Court does not believe that this language is intended to bar a civil action against an alleged father by an unwed mother.

This leads to the conclusion that 20-88.26:1 in limiting the Court to limits of 20-61.1 in determining paternity violates the constitutional rights of non--resident children in civil proceedings to enforce child support in a civil action under URESA. Specifically, it violates the constitutional right of Rahiem Leon Boykin, the illegitimate child here.

As Virginia would allow the use of a blood grouping test in other civil support proceedings, it must do the same in this civil support proceeding. Consequently, this Court concludes that the testimony of Dr. Hossani relating to the blood grouping test is admissible.

In brief summary:
1. The right of children to enforce support is not limited in Virginia to the criminal sanction of 20-61.1.

2. Virginia provides a civil right to child support for its resident children, and permits the blood grouping test of 20-61.2. The Constitution requires that children of unwed mothers have this same right.

3. Under URESA, Virginia provides for the support right of a non-resident child to be enforced in a civil proceeding.

4. While the URESA support right states that issues of paternity are limited to the limits of 20-61.1, such a limitation denies non-resident children the blood grouping test available to Virginia children in civil support cases. Virginia cannot constitutionally deny non-resident children the same rights granted resident children.

5. Therefore, a non-resident child under URESA, whether the mother was married or not, can use the blood grouping test of 20-61.2. A resident child of an unwed mother can do this; so must the non-resident child be allowed to do this.

This leads to the final issue. What is the burden of proof on Boykin. Is it by the greater weight or preponderance of the evidence? Is it by clear and convincing evidence? Is it beyond a reasonable doubt? As this is not a criminal case, reasonable doubt is not the standard.

In two instances the Virginia code prescribes "clear and convincing" as the standard in paternity cases. See sections 64.1-5.1 and 64.1-5.2. Section 20-61.1 requires beyond a reasonable doubt, but that is a criminal section.

This Court is not satisfied that a mere preponderance of the evidence is sufficient, and holds that paternity must be proven by clear and convincing evidence. When the testimony of Dr. Hossani is considered, a 94.23% probability, this Court believes Boykin has proven by clear and convincing evidence that Phillips is the father of her child.

Consequently, a support obligation of $30.00 per week, effective from June 1, 1981, under the order of this Court will be entered, with objection of Phillips noted. The Juvenile Court order of the same amount was entered on January 26, 1981, and nothing indicates that the order was suspended pending appeal. That order will be affirmed by this Court, and this Court's order will state the amount Phillips should have paid since January 26, 1981, to the date of the order.

The order will remand this case to the Juvenile Court for further procedure.