# Richmond

JACQUELINE BRENDA BROWN, AN INFANT UNDER THE AGE OF TWENTY-ONE YEARS WHO SUES BY MINNIE A. LAYNE, NEXT FRIEND v. JACOB BROWN.

November 20, 1944.

Record No. 2836.

Present, All the Justices.

354

The opinion states the case.

*John W. Fussell* and *Thomas H. Stone*, for the appellant.

*Louis S. Herrink* and *Abraham Homer*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

Jacqueline Brenda Brown, an infant girl, born out of wedlock, brought this suit through her next friend against the defendant, her putative father, to require him to make provision for her support. From a decree sustaining a demurrer to the bill this appeal was taken.

The bill alleged that Fannie Cardelino, the mother of the infant, while engaged to the defendant, Jacob Brown, under repeated promises of marriage by him, was induced to have carnal intercourse with him whereby she became pregnant, and the complainant was born October 3, 1941; that the defendant continued his promises of marriage for a month after he knew that Fannie Cardelino was pregnant with child by him; that he failed to carry out his promises, and subsequently, under a threat of a suit for breach of his marriage contract, he settled Fannie Cardelino's claim for damages by paying to her the sum of $1,000; and that the infant has been damaged and injured in her name and reputation, and deprived of her proper station in society and a suitable home with means of maintenance and support, to all of which she would have been entitled had the defendant complied with

his contract. It concluded with a prayer for damages, for support, and general relief.

The several assignments of error present the principal question,—whether, under the laws of this State, there is any legal duty on the part of the father of an illegitimate child to support such child.

Under the doctrine of the common law of England, a bastard was considered as kin to no one, and was, therefore, incapable of being the heir of any person. No inheritable blood flowed through his veins. Statutes modifying the severity of this rule have been enacted in many of the States, including Virginia. 7 Am. Jur., Bastards, section 150, *et seq.;* 10 C. J. S., Bastards, section 23, *et seq.;* Virginia Code, 1942, (Michie) sections 5268, 5269 and 5270.

At common law, the putative father is under no obligation to support or to contribute to the support of his illegitimate child. No distinction is made between a reputed father and an admitted father. Accordingly, the courts in States which have adopted the common law have held in almost every case in which the question has been raised that, without legislation, the father of an illegitimate child cannot be required to provide for its support. 7 Am. Jur., Bastards, section 69; 10 C. J. S., Bastards, section 17c.

By statute, the common law continues in full force in Virginia, except as altered by the General Assembly of Virginia.

"The common law of Engand, so far as it is not repugnant to the principles of the Bill of Rights and Constitution of this State, shall continue in full force within the same, and be the rule of decision, except in those respects wherein it is or shall be altered by the General Assembly." Section 2, Code of Virginia, 1942, (Michie).

In 1792, the General Assembly of Virginia (Acts of Assembly, 1792, section 18), enacted a statute requiring the putative father of a bastard child born of a single woman, not being a servant or slave, "which shall be chargeable, or likely to become chargeable, to any county," to support such child.

In *Fall* v. *Overseers of the Poor,* 3 Munf. (17 Va.) 495, it was held that the purpose of this statute was not to relieve

the mother from the expense of maintaining the child, but to relieve the county of that charge.

See also, *Mann* v. *Commonwealth*, 6 Munf. (20 Va.) 452.

By an act of the General Assembly, 1874-75, chapter 112, page 94, the statute was repealed. Mr. Minor in 1 Minor's Institute (4th Ed.) chapter 9, page 148, says that the repeal was due to an apprehension that it was in conflict with the Civil Rights Act of 1866, because it was inapplicable to the children of all women.

The appellant contends, however, that because of the natural and moral obligation upon an admitted father to provide for the support and maintenance of his offspring, the general modern trend is to enforce that obligation against him, even in the absence of statute. In support of this, she cites two cases from the State of Kansas, several from North Carolina, and two cases from Virginia.

In *Doughty* v. *Engler*, 112 Kan. 583, 211 P. 619, 30 A. L. R. 1065, and *Myers* v. *Anderson*, 145 Kan. 775, 67 P. (2d) 542, it was held that the father of an illegitimate child, too young to care for itself, is under a nonstatutory obligation to support it.

The Kansas court recognized the common law rule; but specifically based its holding upon the grounds of moral obligation, principles of natural law, and a Kansas statute which modified the common law according to "the condition and wants of the people."

With the exception of these two cases, we have not been cited any case in which the common law rule was not followed in the absence of legislation to the contrary.

The case of *Sanders* v. *Sanders*, 167 N. C. 319, 83 S. E. 490, held, in following other cases from that State, that there was a legal duty on the father of an illegitimate child in North Carolina to support him because of a bastardy statute of that State.

In *Hayes* v. *Strauss*, 151 Va. 136, 144 S. E. 432, a *habeas corpus* proceeding, we held that the interest of the motherless bastard child, the controlling issue, justified the right of

its father to have its custody as between himself and the maternal grandmother of the child.

*Withrow* v. *Edwards*, 181 Va. 344, 25 S. E. (2d) 343, is not in point. The facts, circumstances, and issues raised were entirely different. That case involved a construction of Virginia Code, 1942, (Michie) section 5270, with reference to the right of inheritance of a child born of a void marriage.

In Virginia, the General Assembly has altered some of the harsh provisions of the common law relating to the rights of inheritance of children born out of wedlock, and provided for the legitimation, under specified conditions, of children born before the marriage of their parents, as well as for the issue of marriages deemed null in law, or dissolved by a court. Virginia Code, 1942, (Michie) sections 5268, 5269, and 5270, chapter 213, "Descents and Distributions."

Section 5268: "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother as if lawfully begotten."

Section 5269: "If a man, having had a child or children by a woman, shall afterwards intermarry with her, such child or children, or their descendants, if recognized by him before or after marriage shall be deemed legitimate."

Section 5270: "The issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate."

That there has been no legislation providing that an illegitimate child shall inherit from one who is merely his reputed, unmarried father, or that he shall transmit inheritance on the part of such father, emphasizes the length to which the General Assembly has gone, and the point where it stopped.

There is no merit in the contention that a denial of recovery in this case would result in a violation of the appellant's rights guaranteed under the Fourteenth Amendment to the Constitution of the United States, and under Sections 1 and 11 of the Constitution of Virginia.

The Fourteenth Amendment to the Federal Constitution applies to actions of the several States. Section 1 of the Bill of Rights of the Virginia Constitution relates to equality and

rights of men, and section 11 provides for due process of law in the preservation of rights in property.

Every State is clothed with sovereign power to adopt laws relating to property rights within its boundaries, marriage, divorce, inheritance, and support of children. Each of these subjects is covered by the general laws of Virginia. In cases of bastardy, Virginia has expressly adopted the common law, and expressly provided that it shall "be the rule of decision, except in those respects wherein it is or shall be altered by the General Assembly." These words are simple and clear. They mean what they say. They apply with full force to all of the courts of this Commonwealth. Law-making by the courts in the face of this language would be an unconstitutional assumption of legislative power.

Appellant's argument should be addressed to the General Assembly of Virginia and not to the courts, in the absence of legislation on the subject.

The decree of the trial court is accordingly affirmed.

*Affirmed.*