JAMES EDWARD JONES

V.

JANICE O. ROBINSON

Record No. 820855

THOMAS CAMERON WHITEMAN

V.

MARY LEE KELLEY

Record No. 821373

MICHAEL L. VIVIER

V.

ANN PAGE

Record No. 821808

Decided April 26, 1985, at Richmond

Present: All the Justices

*G. Warthen Downs* for appellant. (Record No. 820855.)

*Donald W. Lemons (Minor & Lemons, P.C.,* on brief), for appellee. (Record No. 820855.)

*Kenneth R. Weiner (Richard N. Rosen; Weiner, Weiner & Weiner, P.C.,* on briefs), for appellant. (Record No. 821373.)

*Douglas Fredericks (Abrons, Fredericks, McCormack & Fasanaro,* on brief), for appellee. (Record No. 821373.)

*Jay H. Zimmerman* for appellant. (Record No. 821808.)

*Alfred W. Bates, III (Robert W. Lawrence; Tidewater Legal Aid Society,* on brief), for appellee. (Record No. 821808.)

COCHRAN, J., delivered the opinion of the Court.

These three appeals present the same question for our determination, whether § 20-61.1 of the Code of Virginia, as it read at the times of trial, provided the sole means to prove the paternity of a child of unwed parents. In each case, the unmarried mother of a child filed in the juvenile and domestic relations district court a petition for support against the putative father. In each case, upon appeal to the circuit court, that court, after admitting evidence not contemplated by § 20-61.1, found the putative father to be the child's father.

At the time each case was tried in the circuit court, § 20-61.1 provided as follows:

> **§ 20-61.1. Support of children of unwed parents by father; evidence of paternity.** — Whenever in proceedings hereafter under this chapter concerning a child whose parents are not married, a man admits before any court having jurisdiction to try and dispose of the same, that he is the father of the child or the court finds that the man has voluntarily admitted

paternity in writing, under oath, or if it be shown by other evidence beyond reasonable doubt that he is the father of the child and that he should be responsible for the support of the child, the court may then enter and enforce judgment for the support, maintenance and education of such child as if the child were born in lawful wedlock.

Such other evidence that the man is the father of the child shall be limited to evidence of the following:

(1) That he cohabited openly with the mother during all of the ten months immediately prior to the time the child was born; or

(2) That he gave consent to a physician or other person, not including the mother, charged with the responsibility of securing information for the preparation of a birth record that his name be used as the father of the child upon the birth records of the child; or

(3) That he allowed by a general course of conduct the common use of his surname by the child; or

(4) That he claimed the child as his child on any statement, tax return or other document filed and signed by him with any local, State or federal government or any agency thereof.

. . . .

After the cases were tried, this statute was amended in 1982 (Acts 1982, c. 307) to include this paragraph to allow an additional category of evidence of paternity:

(5) Results of medically reliable genetic blood grouping tests, which tests may include the human leukocyte antigen (HLA) test.

At the time each case was tried, Code § 20-61.2 provided as follows:

In the trial of any divorce or support proceedings in any court in which the question of paternity arises, regardless of any presumptions with respect to paternity, the court before whom the matter may be brought, upon motion of either party, may direct and order that the alleged father, the mother and child shall submit to a blood grouping test; provided, that the court, in its discretion, may require the person

requesting the blood grouping test to pay the cost thereof. The results of such blood grouping test shall be admitted in evidence when offered by a duly licensed practicing physician or other qualified person.

After the cases were tried, this statute was amended in 1982 (Acts 1982, c. 307) to apply to "any matter in any court in which the question of paternity arises," to provide for blood grouping tests rather than a single test, and to require that the results be offered in evidence by a "duly licensed and certified practicing physician or other qualified scientist."

## The HLA Test[1]

The human leukocyte antigen (HLA) test involves an analysis of the antigens appearing on a person's white blood cells. Antigens are genetically-transmitted structures which are contributed by a child's mother, father, or both. Antigens existing in the child but not present in the mother must have been contributed by the biological father.

The putative father may be excluded as the child's father by two means: (1) if a child possesses an antigen not present in the known mother or the putative father, the putative father cannot be the child's natural father, and (2) if the child does not possess antigens that must be contributed by the putative father because of certain haplotypes, or antigen combinations, that he possesses, the putative father cannot be the child's natural father. Conversely, if both the child and the putative father display certain antigens not found in the mother, the putative father cannot be excluded from the class of possible fathers. As the number of antigens appearing in the child and putative father but not the mother increases, the likelihood also increases that the putative father is the biological father. Statistical calculations of the probability of paternity can be made on the basis of established data regarding the frequency with which particular genes appear in certain segments of the population and the combinations in which these genes appear in the child and putative father. *See generally* Neville J. Bryant, Disputed Paternity 110-18 (1980); A. Svejgaard,

---

[1] We also decided today two other disputed paternity cases which involve evidentiary issues relating to HLA tests. *See Hankerson v. Moody*, 229 Va. 270, 329 S.E.2d 791 (1985); *Buckland v. Commonwealth*, 229 Va. 290, 329 S.E.2d 803 (1985).

M. Hauge, C. Jersild, P. Platz, L. P. Ryder, L. Straub Nielson, M. Thomsen, The HLA System (2d rev. ed. 1979) (hereinafter cited as Svejgaard); 3B Lawyers' Medical Cyclopedia § 24.29 (3d ed. 1983) (hereinafter cited as Medical Cyclopedia); Terasaki, *Resolution by HLA Testing of 1000 Paternity Cases Not Excluded by ABO Testing*, 16 J. Fam. L. 543 (1978).

The existence of human leukocyte blood groups was first documented in the 1950s, and during the next 20 years experts made significant discoveries concerning the HLA system and appropriate testing and typing procedures. *See Svejgaard, supra,* at 4-7. Prior to these recent developments, use of blood groups in cases of disputed paternity was limited to exclusion of men falsely accused by analysis of ABO, MNSs, Rh, and other blood systems. *See generally* R. R. Race & R. Sanger, Blood Groups in Man (6th ed. 1975); Medical Cyclopedia, *supra,* §§ 24.27, 24.28. The HLA system, however, is the most complex known human genetic system. Because a great number of haplotypes have been discovered and because each haplotype is considered rare, the HLA system can be used to establish a significant probability of paternity. *See* Bryant, *supra,* at 110-15; Svejgaard, *supra,* at 78; Medical Cyclopedia, *supra,* § 24.29; Terasaki, *supra,* at 544.

### *Jones* v. *Robinson*

Janice Olivia Robinson filed her petition in 1980 alleging that James Edward Jones was the father of her son, born June 17, 1974. The juvenile and domestic relations district court ordered blood grouping tests, including HLA tests, and found Jones to be the child's father. Jones appealed.

In the trial *de novo* in the circuit court, the evidence established that Jones and Robinson had engaged in sexual intercourse two or three times a week during September, October, and November of 1973, that she engaged in sexual intercourse with no other man during that period, and that Jones made gifts to the child and purchased clothing for him at various times through 1979. The parties stipulated that Robinson could not prove paternity by any of the methods allowed under § 20-61.1 prior to the 1982 amendment.

Over Jones's objection, the court admitted into evidence under the provisions of § 20-61.2 the results of the blood grouping tests which revealed a 99.97% probability that Jones was the father. Applying a "clear and convincing" standard of proof in what the

court ruled was a civil proceeding, the court found Jones to be the biological father, and ordered him to pay support in specified amounts.

### Whiteman v. Kelley

Mary Lee Kelley filed her petition in 1980 in the juvenile and domestic relations district court, alleging that Thomas Cameron Whiteman was the father of her daughter, born February 17, 1977. After an adverse ruling based upon her failure to prove paternity by any method provided in § 20-61.1, Kelley appealed.

The circuit court admitted the results of blood grouping tests under authority of § 20-61.2. These tests, including HLA tests, showed at least a 99% probability that Whiteman was the child's father. For the record, Kelley proffered evidence, excluded by the court, that she was a virgin until she first had sexual intercourse with Whiteman and that she had sexual intercourse with no other man prior to the birth of her child.

At trial, Whiteman did not testify on the paternity issue. The court, finding that the evidence established that he was the child's father "beyond a reasonable doubt," ordered Whiteman to pay support in specified amounts, attorney's fees for Kelley's counsel, and the costs of the blood grouping tests previously ordered on Kelley's motion.

### Vivier v. Page

Ann Page filed her petition in January, 1982, in the juvenile and domestic relations district court alleging that Michael L. Vivier was the father of her daughter, born December 26, 1981. From an adverse ruling of that court, Vivier appealed to the circuit court. Page testified that she lived with Vivier from August, 1979, until June of 1981. She failed to show paternity by any of the methods authorized by § 20-61.1. No blood test was conducted. The trial court overruled Vivier's motion to strike Page's evidence and enter summary judgment for him because of Page's failure to produce evidence required by § 20-61.1. Vivier did not testify. The court, without stating what standard of proof was required, found that Vivier was the father of Page's child and ordered him to pay support in specified amounts.

### The statutes

Code § 20-61 defines the crime of desertion and nonsupport, classifies it as a misdemeanor, and recites the punishments which may be imposed upon conviction. It has existed in various forms for many years. *See, e.g.,* Code 1919, § 1936; Code 1936, § 1936; Code 1950, § 20-61 (Supp. 1972). This is a criminal statute which provides no civil relief. *See Commonwealth* v. *Shepard,* 212 Va. 843, 845, 188 S.E.2d 99, 101 (1972).

Code § 20-61.1[2] was first enacted in 1952, not as an amendment to § 20-61 but as an independent statute, codified as a part of the provisions of Title 20, Chapter 5 of the Code.[3] Prior to the enactment of this statute, there was no recognized duty on the part of the father to support his illegitimate child. *See Brown* v. *Brown,* 183 Va. 353, 355, 32 S.E.2d 79, 80 (1944).

Code § 20-61.2 was first enacted in 1966, not as an amendment to § 20-61 but as an independent statute, codified as a part of the provisions of Title 8 of the Code applicable to civil remedies.[4] Acts 1966, c. 517.

Code § 20-67 confers on juvenile and domestic relations district courts exclusive original jurisdiction over proceedings under Chapter 5, "Desertion and Nonsupport," of Title 20, "Domestic Relations."

Code § 16.1-241 confers on juvenile and domestic relations district courts exclusive original jurisdiction over matters relating to the support of a child. Civil appeals to the circuit courts conform to equity practice. Code § 16.1-296.

---

[2] The statute initially allowed proof of paternity only by the father's admission of paternity before a court. Acts 1952, c. 584. The section was soon amended to allow use of a man's voluntary admission of paternity in writing under oath. Acts 1954, c. 577. The first four numbered categories of "other evidence," which had to show paternity "beyond a reasonable doubt," were added later. Acts 1972, c. 713.

[3] Section 20-61.1 was originally numbered 20-88.32. Acts 1952, c. 584. The provision was enacted following the General Assembly's adoption in the same year of the Uniform Reciprocal Enforcement of Support Act, found at Chapter 5.2 of Title 20, §§ 20-88.12 to -88.31. Acts 1952, c. 516. The Virginia Code Commission assigned the number 20-61.1 to the section for better arrangement in the Code. *See* § 20-61.1 (Supp. 1952) and accompanying explanatory note. At its next session, the General Assembly accepted this change, amending and reenacting the provision as § 20-61.1. Acts 1954, c. 577.

[4] Section 20-61.2 was originally codified by the Virginia Code Commission as § 8-329.1. The General Assembly recodified it in 1977 to § 20-61.2. Acts 1977, c. 624. It was amended and reenacted in 1982. Acts 1982, c. 307.

Code § 20-88.26:1, a part of the civil enforcement provisions of the Revised Uniform Reciprocal Enforcement of Support Act, provides for adjudication of paternity, where that becomes an issue, "within the same limits as provided in § 20-61.1."

It appears that § 20-61.2 was enacted to permit in divorce or support proceedings the admissibility of evidence of a blood grouping test only to determine whether a putative father could not be the biological father. A husband might move for such a test to exclude himself as father, which the test could do, and rebut the presumption of legitimacy of a child born during the marriage. A wife, on the other hand, might move for such a test to show that her husband could not be excluded as the father. Blood grouping tests in general have been said to be effective in establishing nonpaternity. *See Little* v. *Streater*, 452 U.S. 1, 7-8 (1981). Thus, while the statute was moved into Chapter 5 of Title 20, the provisions of which govern proceedings in criminal nonsupport actions under § 20-61,[5] it remains by its language applicable to civil as well as criminal proceedings. The statute was enacted at a time when § 20-61.1 allowed proof of paternity only by the father's admission in court or in writing under oath. Thus, the two statutes were not inconsistent.

It further appears that § 20-61.1 applies to both civil and criminal proceedings. Used in conjunction with § 20-61, it is criminal in nature. *See Distefano* v. *Commonwealth*, 201 Va. 23, 27-29, 109 S.E.2d 497, 500-01 (1959). The statute in itself, however, is not criminal in that it provides no penalty or punishment but merely provides for entry and enforcement of a judgment for support. Nevertheless, we perceive the legislative intent to have the statute control the determination of paternity in all cases concern-

---

[5] The language of various provisions of Chapter 5 reveals that the chapter contemplates procedures to be used in criminal prosecutions under § 20-61. Certain sections refer to the use of a summons, warrant, or arrest to initiate proceedings under the chapter. *See* §§ 20-65, -66, -70, -75. The jurisdictional provision allows an action to begin by grand jury indictment or presentment. *See* § 20-67. Sections speak of the defendant as the "accused," the complaint against him as a "charge," his possible response as a "plea of guilty," and a judgment under these provisions as a "conviction" for an "offense." *See* §§ 20-62, -68, -72, -75, -77, -80, -83, -84.

Chapter 5 provides for extradiction in proper cases. *See* § 20-84. It allows appointment of probation officers to give full effect to its provisions. *See* §§ 20-85, -86. Its provisions repeatedly refer to sentences, suspension, probation, and recognizance. *See* §§ 20-62, -63, -72, -73, -74, -75, -77, -78, -80, -84. These references demonstrate that Chapter 5, which now includes § 20-61.2, embraces criminal nonsupport actions.

ing a child of unwed parents. The incorporation by reference of the requirements of § 20-61.1 into the civil enforcement provisions of the Revised Uniform Reciprocal Enforcement of Support Act strengthens this perception. *See* § 20-88.26:1. It is unrealistic to suggest that the General Assembly intended to permit evidence to prove paternity in a civil case different from that required in a criminal case. Under such a theory, paternity established under the less stringent proof requirements of a civil support action would be an insufficient basis for criminal nonsupport proceedings; a man might never be prosecuted criminally for failure to support his child despite the civil determination of paternity and the existence of a judgment declaring his support obligation.

In *Carroll* v. *Sneed*, 211 Va. 640, 644, 179 S.E.2d 620, 623 (1971), we held an illegitimate child was entitled to share in a recovery for the wrongful death of her father. We observed, however, that a father had no duty to support an illegitimate child "absent the unusual circumstances set forth in Code § 20-61.1." 211 Va. at 643, 179 S.E.2d at 622-23.

In *Brown* v. *Commonwealth*, 218 Va. 40, 43, 235 S.E.2d 325, 328 (1977), we held that proof of paternity of a child of a void bigamous marriage was not restricted by § 20-61.1. *See Allstate Messenger Ser.* v. *James*, 220 Va. 910, 912, 266 S.E.2d 86, 87 (1980) (§ 20-61.1 not applicable in actions brought under the Workers' Compensation Act); *McClaugherty* v. *McClaugherty*, 180 Va. 51, 66-67, 21 S.E.2d 761, 767-68 (1942) (child of common-law marriage may enforce father's support obligation apart from desertion and nonsupport proceedings). We observed in *Brown* that § 20-61.1 was limited to cases involving the support of a child "of a meretricious union between a man and a woman." 218 Va. at 43, 235 S.E.2d at 328.

Each of the three appeals with which we are here concerned originated in a juvenile and domestic relations district court proceeding to obtain support for a child whose parents had never entered into a marriage relationship. In each case, the mother of an illegitimate child sought to obtain a judgment against the putative father for support of the child. The validity of the judgment entered in each case depends upon the validity of § 20-61.1 as it existed prior to the 1982 amendment. Therefore, we turn to certain recent decisions of the United States Supreme Court to determine whether the statute in its pre-amendment form violated the

Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

■ In *Gomez* v. *Perez*, 409 U.S. 535 (1973), the Supreme Court held that a state may not constitutionally give legitimate children a judicially enforceable right to support from their fathers while denying such an essential right to illegitimate children. 409 U.S. at 538. Recognizing the "lurking problems with respect to proof of paternity," the Court said those problems should not be "lightly brushed aside" but could not be used to establish "an impenetrable barrier that works to shield otherwise invidious discrimination." *Id.* Accordingly, the Court has recently invalidated one-year and two-year statutes of limitations applying to paternity actions on behalf of illegitimate children seeking support. *See Pickett* v. *Brown*, 462 U.S. 1, 11 (1983); *Mills* v. *Habluetzel*, 456 U.S. 91, 101 (1982).

■ While a classification based on illegitimacy is not subject to strict scrutiny, such a classification is invalid unless it bears an evident and substantial relationship to legitimate state interests. *Pickett*, 1 U.S. at 8; *see also Mills*, 456 U.S. at 99 (requiring "substantial relationship"); *Lalli* v. *Lalli*, 439 U.S. 259, 268 (1978) (requiring "evident and substantial relation"); *Trimble* v. *Gordon*, 430 U.S. 762, 767-69 (1977) ("strictest scrutiny" not required); *Mathews* v. *Lucas*, 427 U.S. 495, 506-09 (1976) ("most exacting scrutiny" not required; reasonable relationship needed). The Equal Protection Clause does not prohibit application of procedural rules to claims of illegitimate children which do not also apply to claims of legitimate children. *Mills*, 456 U.S. at 97. The Social Security Act may require illegitimate children to prove actual dependency before receiving survivors' benefits, although legitimate children are presumed dependent. *Mathews*, 427 U.S. at 515-16. Similarly, a state may require proof of paternity in support actions on behalf of illegitimate children although no such requirement is imposed on legitimate children seeking support. *Mills*, 456 U.S. at 97. The state may also properly impose restrictions on proof in paternity cases to further its valid interest in preventing assertion of fraudulent claims. *Id.* at 98-99. But any restrictions must nonetheless allow a reasonable opportunity for assertion of support claims on behalf of illegitimate children. *Id.* at 99.

■ The proof requirements of § 20-61.1 provided no such reasonable opportunity to certain illegitimate children. Prior to the

1982 addition of another category of acceptable evidence, only illegitimate children whose fathers had lived with their mothers for the entire 10 months prior to birth or had affirmatively acknowledged their children in the narrowly restricted ways allowed by § 20-61.1 could establish their right to support. Children whose fathers avoided the acts described in § 20-61.1 could never recover support, even if the father openly admitted paternity in ways not specified in the statute. Allowable proof of paternity lay within the absolute control of the father, whose unwillingness to assume voluntarily the obligation of support denied his illegitimate child a right which could not be denied a legitimate child. No meaningful device for establishing paternity was available to the illegitimate child. Such restrictions on the available methods of proof imposed an impenetrable barrier resulting in the kind of invidious discrimination contemplated by *Gomez.*

This is not to say that the General Assembly may not impose a more rigorous standard of proof in paternity actions than the preponderance standard which applies in most civil litigation. The state has a valid interest in protecting against fraudulent claims and may address the "lurking problems" of proof by adopting a higher standard by which the trier of fact must evaluate the evidence in paternity cases. *See* § 64.1-5.2; *Johnson* v. *Branson,* 228 Va. 65, 69, 319 S.E.2d 735, 736 (1984) (clear and convincing proof of paternity required under descent and distribution statutes). Imposition of the standard of proof beyond a reasonable doubt in § 20-61.1, applicable to civil as well as criminal proceedings, is permissible. But, where, as in these cases, proof of paternity could be rendered worthless simply because the evidence did not show a volitional act by the putative father in compliance with § 20-61.1, the statutory restrictions cannot withstand an Equal Protection challenge. Accordingly, we hold that § 20-61.1, as it read prior to the 1982 amendment, was unconstitutional.

### Effect of unconstitutionality of Code § 20-61.1

Being unconstitutional, the provisions of § 20-61.1 prior to the 1982 amendment were inapplicable in the present cases. Under *Gomez,* illegitimate children cannot be denied a judicially enforceable right to support from their fathers since legitimate children in Virginia are accorded such a right. Legitimate children may proceed to obtain judgments against their fathers for support under the provisions of § 16.1-241, *et seq.* Illegitimate

children may proceed under the same statutory authority and the circuit courts, on appeal, absent a valid § 20-61.1, may act under their general equity powers. It follows that during this hiatus existing prior to the 1982 amendment to § 20-61.1, any probative evidence was admissible and the standard of proof was that of other civil actions, proof by a preponderance of the evidence.

Results of blood grouping tests, including HLA tests, were admissible, therefore, in *Jones* v. *Robinson* and *Whiteman* v. *Kelley* regardless of statute. The evidence as to sexual intercourse between Jones and Robinson and gifts from Jones to the child was also admissible.

The reliability of HLA tests is not at issue in these cases and can hardly be questioned in view of the action of the General Assembly in expressly authorizing such tests under the 1982 amendment to § 20-61.1. Indeed, in *Whiteman*, although the putative father objected to the admissibility of HLA tests, his own scientific expert agreed with the mother's expert that the results of the tests showed a 99% probability that Whiteman was the father. Moreover, in each of these two cases, the standard of proof imposed by the circuit court was higher than the required proof by a preponderance of the evidence.

As to *Vivier* v. *Page*, the evidence in the record is slight. Taken in the light most favorable to the mother, it shows that the mother and putative father lived together for more than two years until several months after the mother became pregnant and that during this period of time she had sexual intercourse with the putative father and no other man. As we have demonstrated, such evidence was admissible.[6] We cannot say that it was insufficient as a matter of law to prove paternity in this instance by a preponderance of the evidence.

Under § 20-61.2, the three circuit courts had discretionary authority, necessarily implied from the statutory language, to require the father in each case to pay the costs of tests and witness fees, and this was ordered in *Whiteman* v. *Kelley*. In that case, however, the court also ordered the father to pay attorney's fees for the mother but § 20-61.2 did not give, either specifically or by

---

[6] By amendment to § 20-61.1(1), effective July 1, 1985, proof of paternity may be shown by evidence that the putative father "cohabited openly with the mother at the probable time of conception," rather than for the entire period of ten months prior to the child's birth. Acts 1985, c. 5. This amendment will allow in future paternity cases evidence of the kind on which Page relied.

necessary implication, the authority to do so. In *Jones* v. *Robinson*, the circuit court vacated the order of the juvenile and domestic relations district court requiring the father to pay for the blood tests ordered pursuant to the mother's motion, but no cross-error was assigned to this ruling. In *Vivier* v. *Page*, no issue was raised as to fees and costs.

For the reasons stated, we will affirm the judgments in *Jones* v. *Robinson* and *Vivier* v. *Page*; we will modify the judgment in *Whiteman* v. *Kelley* to delete the allowance of attorney's fees for the mother's attorney and we will affirm the judgment as modified.

> *Record No. 820855 - Affirmed.*
> *Record No. 821373 - Modified and affirmed.*
> *Record No. 821808 - Affirmed.*