**Salem**

JIMMY LEE BRIDGEMAN

v.

COMMONWEALTH OF VIRGINIA

No. 0304-85

Decided December 16, 1986

COUNSEL

Bernard S. Via III, for appellant.

Margaret Poles Spencer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

COLEMAN, J. — Jimmy Lee Bridgeman appeals his jury trial conviction for incest, Code § 18.2-366, for which he was sentenced to five years in the penitentiary. Because we find the evidence was insufficient as a matter of law to convict appellant of incest, we address only that issue.

■ The standard for review of criminal convictions requires that we consider the evidence in the light most favorable to the Commonwealth, giving it all inferences fairly deducible therefrom. *Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

On November 2, 1983, Sandra Bridgeman, appellant's thirteen year old daughter, gave birth to a son. At the request of the Washington County Department of Social Services, a search warrant[1] was issued to take blood samples from Sandra, her infant son, her brother Gerald, and her father, the appellant. After results of the blood tests were received, appellant was indicted for incest.

The Commonwealth's entire case against appellant was based upon expert testimony involving the results of the Human Leucocyte Antigen (HLA) blood test which was performed on the blood of appellant, his daughter Sandra, her brother Gerald and her infant son. No complaint or allegation of incest was ever made by Sandra, the alleged victim, and there was no direct testimony that an incident of incest had indeed occurred. Dr. G. L. Ryals, who was qualified as an expert in tissue typing and serology, testified that nine blood typing systems—two more than routinely recommended—were conducted, "to give [the appellant] additional chances to be excluded" as the potential father of the infant boy. None of the tests excluded appellant, although they did exclude Sandra's brother Gerald. Dr. Ryals stated that the test results showed that appellant and the infant boy "share common genetic markers" that are not shared by Sandra. From the results of the

---

[1] The affidavit supporting the search warrant was based on separate complaints filed by three doctors. Each doctor examined appellant's daughter during her pregnancy and expressed their suspicions of incest. The suspicions were based upon the doctors' observations of "overprotectiveness of the father (appellant), the father bringing the girl in for her appointments during the pregnancy, the fact that the child did not flinch during examination of the vaginal area which indicated prior sexual conduct, the fact that the child was not upset by the pregnancy, and the fact that the father didn't want anyone in Washington County to know about the visit to the doctor."

blood test, Dr. Ryals stated that he calculated a 99.58% probability that appellant was the father of the infant.

■ The Commonwealth's case, which was entirely circumstantial, involved a two-step inference: (1) the HLA blood test results showed a 99.58% probability that appellant was the father of the infant, and (2) the birth of a child is proof of sexual intercourse by the mother. Where evidence is entirely circumstantial, all necessary circumstances proved must be consistent with guilt and inconsistent with innocence, and must exclude every reasonable hypothesis of innocence. *Sutphin*, 1 Va. App. at 244, 337 S.E.2d at 898. Clearly the birth of an infant, in most instances, proves that the mother and father have had intercourse. *See Salyer v. Commonwealth*, 163 Va. 1027, 1031, 175 S.E. 757, 759 (1934). Dr. Ryals conceded, however, that HLA test results can never conclusively prove the identity of that infant's father. He testified as follows: "[The HLA test] on average will exclude almost all wrongly accused men. Doesn't say it will exclude all of them, but it will exclude the great majority of them, indeed almost all of them."

■ While the HLA test can conclusively *exclude* a person as the biological parent of a child, the results also provide the basis to calculate an affirmative *probability* of paternity for an individual not excluded by the HLA blood test results.[2] However, in a criminal prosecution, based entirely on circumstantial evidence, "a suspicion of guilt, however strong, or even a probability of guilt, is insufficient to support a criminal conviction." *Bishop v. Commonwealth*, 227 Va. 164, 170, 313 S.E.2d 390, 393 (1984). Nevertheless, circumstantial evidence may be more compelling and persuasive than direct evidence, and when convincing, it is entitled to as much weight as direct evidence. *Epperly v. Commonwealth*, 224 Va. 214, 228, 294 S.E.2d 882, 890 (1982). Whether the Commonwealth relies upon either direct or circumstantial evidence, it is

---

[2] When a child's HLA antigens are compared to those of his mother, it becomes immediately apparent which two antigens came from the mother and which two must therefore have come from the father. A man is *excluded* if he and the mother both lack an antigen which the child has. Conversely, because the HLA antigens may be found together in various arrangements, making possible tens of thousands of HLA combinations, the possibility that a child and a putative father share a common haplotype, but are unrelated, is very unlikely, and provides a basis for a calculation of a statistical probability of paternity. *See* Lemmon & Murphy, *The Evidentiary Use of the HLA Blood Test in Virginia*, 19 U. Rich. L. Rev. 235, 238 n.15 (1985); *see also Jones v. Robinson*, 229 Va. 276, 280-81, 329 S.E.2d 794, 797-98 (1985).

not required to disprove every remote possibility of innocence, but is, instead, required only to establish guilt of the accused to the exclusion of a reasonable doubt. *Cook v. Commonwealth*, 226 Va. 427, 433, 309 S.E.2d 325, 329 (1983).

The appellant argues that the HLA test results, although indicating a high probability of paternity, are insufficient standing alone to prove beyond a reasonable doubt that sexual intercourse occurred between the alleged victim and her father to the exclusion of a reasonable doubt. The Commonwealth contends, on the other hand, that the evidence that appellant had access to the victim corroborated the finding that appellant had intercourse with her. The purported evidence of access consisted of testimony from Sandra, appellant, and Sandra's mother that the family lived together in the same house during the period when Sandra became pregnant. The testimony further revealed, however, that Sandra at no time shared a bedroom with her father, but rather slept in an upstairs bedroom with her mother and sister, while appellant slept on a downstairs couch due to health problems. When the proof of access consists only of evidence that the parties were members of a nuclear family with no other evidence of inclination or opportunity, such evidence is of little probative value. Similarly, the Commonwealth's evidence that appellant made attempts to conceal the fact of his thirteen year old unmarried daughter's pregnancy from the small community in which they lived does not tend to prove that he fathered her child. Finally, the Commonwealth offered as corroborative evidence of intercourse Sandra's testimony that she understood the authorization form for taking blood samples from her and her son when she signed it, and that the form stated that Sandra's father and brother were the putative fathers of her son. However, the assertion of paternity on the form was not made by Sandra, but rather arose from the suspicions of the physicians and their affidavits in support of the request for the search warrant. Sandra simply signed the form after it was read to her because, as she stated: "I thought I had to sign it because they were taking the blood test . . . . They told me to sign it so I did." Although she indicated that she read the already filled in form before signing it, she testified that she did not understand the meaning of the word "putative." There is no evidence, as the Commonwealth asserts, that Sandra expressly or impliedly "accused" her father of being the father of her child by signing the blood test authorization form.

Sandra, called as a Commonwealth witness, denied that she had sexual intercourse with her father. In response to questioning by the Commonwealth's attorney as to the paternity of her child, she named a man who drove a school bus for her elementary school. The Commonwealth did not call the school bus driver as a witness. Investigator Allen Kelly, testifying for the Commonwealth, stated that Sandra told him when he questioned her in October of 1983 that she had intercourse "with some fellow she didn't know at Meadowview Elementary School . . . and she said she did not know his name and could not identify him . . . ." The Commonwealth urges that its case was not weakened by Sandra's testimony, because her prior statements were contradictory and therefore her credibility as a witness was undermined. However, we find that Sandra's prior statements to Officer Kelly concerning the paternity of her baby were not inconsistent with her testimony at trial. She further explained that she was afraid of the man she had sex with at school, and he had threatened to "come back and do the same thing" if she told on him.

We are faced with a situation in which the alleged victim of the crime, called as a witness by the Commonwealth, denied its occurrence. Her testimony was not impeached. Although she expressed love for her father and a desire that he not go to jail, no effort was made to declare her an adverse witness or to discredit her testimony.

The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide. However, whether a criminal conviction is supported by evidence sufficient to prove guilt beyond a reasonable doubt is not a question of fact but one of law. A conviction based upon a mere suspicion or probability of guilt, however strong, cannot stand. *Sutphin*, 1 Va. App. at 248, 337 S.E.2d at 901.

> It can be safely said that in Virginia there is no principle more firmly imbedded in the body of the law, or one that has been more often stated, than the principle that in every criminal case the evidence of the Commonwealth must show, beyond a reasonable doubt, every material fact necessary to establish the offense for which a defendant is being tried.

*McGhee v. Commonwealth*, 219 Va. 560, 561, 248 S.E.2d 808, 810 (1978). A criminal defendant is entitled to the benefit of a reasonable doubt arising from the evidence of the Commonwealth

as well as from his own evidence. *Sims v. Commonwealth*, 134 Va. 736, 753, 115 S.E. 382, 388 (1922).

The Commonwealth urges that the results of the blood tests alone were sufficient to establish that appellant had sexual intercourse with his daughter. The Commonwealth cites *Buckland v. Commonwealth*, 229 Va. 290, 329 S.E.2d 803 (1985), for the proposition that the blood test evidence alone was sufficient to prove Buckland's paternity beyond a reasonable doubt and thus incest. However, in *Buckland* and other cases[3] which we have considered, the evidence of paternity was not limited to the HLA test results. In each case there was evidence that the mother had sexual intercourse only with the putative father within the ten month period prior to the child's birth. Moreover, the Commonwealth's reliance on *Buckland* and other cases dealing with the sufficiency of blood testing to establish paternity is misguided. The provisions of Code § 20-61.1, under which the cases relied upon by the Commonwealth were decided, are not applicable to other than civil support proceedings. Code § 20-61.1 specifically provides that the HLA blood test may prove paternity beyond a reasonable doubt, but only when the question of paternity arises *"in proceedings . . . under this chapter."* Title 20 of the Code of Virginia encompasses domestic relations issues, and Chapter 5, in which Code § 20-61.1 is placed, specifically addresses actions for desertion and non-support. Thus, we find the cases cited by the Commonwealth distinguishable and not controlling or persuasive in the present criminal incest prosecution.

It is a question of first impression in Virginia whether the results of HLA blood tests alone are sufficient to establish guilt beyond a reasonable doubt in a criminal prosecution. The HLA test has gained wide acceptance in the medical and legal communities as being a scientific procedure which yields reliable results. It has been characterized as a "genetic fingerprint" that can exclude paternity in most instances and from which a statistical probability of paternity can be calculated in those instances where the results do not exclude paternity.[4] In this case we need not decide whether under different circumstances the HLA test result alone may suffice to prove incest beyond a reasonable doubt. On the record

---

[3] *Jones v. Robinson*, 229 Va. 276, 329 S.E.2d 794 (1985); *Hankerson v. Moody*, 229 Va. 270, 329 S.E.2d 791 (1985).

[4] The use of "probability of paternity" evidence has been criticized. *See* E. Cleary, McCormick on Evidence § 211 (3d ed.1984).

where the alleged victim testifies as a witness for the Commonwealth and denies the act of incest, we hold that it did not.

Although the expert, Dr. Ryals, testified that in considering the HLA test results the fact that the accused was also the father of the mother of the child would not have any bearing on the ability of the test to exclude paternity, he admitted that there is no statistical data for comparing probability of paternity in incestuous situations with nonincestuous unions. Additionally, Dr. Ryals testified there is an assumption in the calculation of a probability of paternity that there is a fifty percent chance that the man is the father of the child; the fifty percent basis "assume[s] that the . . . alleged father and the mother are equally credible in their respective contentions," because the typical situation is one in which a mother claims paternity and a father denies it.[5] When questioned as to whether the fact that there was not such a claim by the mother would reduce that probability base, the doctor stated that it would not, but then admitted that "if the evidence showed that in terms of the nongenetic evidence (*e.g.* access, fertility) that he were not the father, we could apply a lower value to that." (parenthetical added).

The Commonwealth's own evidence, including the testimony of the expert regarding the lack of statistical information concerning the effect which incestuous relationships have on increasing the probability of the HLA results indicating paternity, and the denial by the alleged victim that intercourse occurred between her and appellant, creates a reasonable doubt that appellant is guilty of the crime charged. The circumstantial evidence presented by the Commonwealth, while showing a high probability of paternity, cannot without more overcome the direct evidence of the Commonwealth presented through an unimpeached, credible witness-victim that the accused did not commit the crime. Because we find that the Commonwealth's direct evidence established reasonable doubt of sexual intercourse, the circumstantial evidence showing a probability of paternity was insufficient as a matter of law to find appellant guilty of incest.

*Reversed.*

Koontz, C.J., and Moon, J., concurred.

---

[5] "Traditionally, laboratories use a neutral figure of 50% in their calculations." Reisner & Bolk, *A Layman's Guide to the Use of Blood Group Analysis in Paternity Testing*, 20 J. Family L. 657, 674 (1982). For a criticism of this approach, *see* E. Cleary, McCormick on Evidence, *supra,* note 4.