COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Willis and Senior Judge Hodges
Argued at Salem, Virginia

JEFFREY KENT BARRETT

v.   Record No. 0433-94-3          MEMORANDUM OPINION[*] BY
                                   JUDGE WILLIAM H. HODGES
CITY OF LYNCHBURG                       MAY 16, 1995

         FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                     Richard S. Miller, Judge

       Margaret Angela Nelson (Office of the Public Defender,
       on brief), for appellant.

       Fran Cannon Slayton (Michael R. Doucette, Deputy
            Commonwealth's Attorney; G. Beth Packert,
       Assistant Commonwealth's Attorney, on brief), for
       appellee.


     Appellant, Jeffrey Kent Barrett, was convicted of driving

under the influence, fourth offense; driving on a suspended

license, subsequent offense; and failing to stop at the scene of

an accident resulting in property damage.  On appeal, appellant

contends that the evidence was insufficient to prove that he was

the driver of the car that struck the victim's vehicle.  We

affirm appellant's convictions.

                              I.

     On July 24, 1993, Barbara Clay was driving a pickup truck on

Lakeside Drive, in the City of Lynchburg, when she was struck

from behind by another car.  Clay's truck was damaged, but the

driver of the car did not stop at the scene of the accident.

Clay drove into the parking lot of a nearby business, obtained

_____
     [*] Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

information from several witnesses who saw the accident, and called the police.  Clay was unsure when the accident occurred, but estimated the collision happened at about 12:30 a.m. or 1:00 a.m.  Clay stated that she was "disoriented" as a result of the accident.

Keith Woolridge testified that he was driving on Lakeside Drive with two friends at the time of the accident.  Woolridge stated a "bluish-gray" car passed Woolridge's vehicle, drove close to Clay's truck bumper, then swerved into the middle traffic lane to avoid Clay's truck.  Woolridge said the "passenger side of the car caught the back wheel of the truck, and . . . the car just spun around and the car just kept on going, no hesitation or stopping . . . ."

Woolridge followed the car into a mobile home trailer park and saw that the car was parked in front of a brown trailer.  Woolridge saw a man and a woman get out of the car.  The man got out of the car on the driver's side.  Woolridge testified the man "stumbled up into [a blue] trailer."  However, on cross-examination, Woolridge admitted that, from his observation point, he could not see a door of the blue trailer.  Therefore, Woolridge did not see the man actually enter a door of the blue trailer.

Woolridge then returned to the scene of the accident to talk with the police.  Woolridge estimated the police arrived within five to ten minutes after the accident occurred.  Woolridge

2

directed the police to the trailer park and informed the police that the driver of the bluish-gray car was in the blue trailer.

Officer Jackson testified he was dispatched to the accident "a few minutes after 2:00 in the morning." He arrived at the accident scene at 2:18 a.m. Jackson saw a blue and silver car with damage on the right front end parked near the blue trailer described by Woolridge. It was later determined that the car was not registered to Barrett.

Barrett was found asleep on the couch inside the blue trailer. A breathalyzer test administered later in the evening indicated Barrett had a blood alcohol content of 0.17%.

Woolridge and his two companions accompanied Jackson to the blue trailer in an effort to identify its occupant as the driver of the car that struck Clay's truck. Woolridge's companions "were not a hundred percent sure" Barrett was the driver of the car. Jackson testified that Woolridge identified Barrett "without any doubt" as the person he followed from the accident, and as the person he saw exit the car and walk to the blue trailer. In court, Woolridge also positively identified Barrett as the driver of the car that struck Clay.

Jason Supry, who lived in the trailer park, testified that at about 1:15 a.m. on the night of the accident, he saw a car park in front of Barrett's trailer. Supry saw two men get out of the car, get into another car, and drive away. Supry could not identify the two men, nor did Supry describe the car.

3

Steve Judkins, who also lived in the trailer park, testified that, from 5:00 p.m. until about 11:00 p.m to 11:30 p.m., on July 24, 1993, he and Barrett drank more than one case of beer in Judkins' trailer. Judkins estimated that Barrett went home that night sometime between 11:00 p.m. and 11:30 p.m.

Barrett testified that he and Judkins drank more than one and one-half cases of beer at Judkins' house on July 24, 1993. Barrett said he left Judkins' trailer at about 11:00 p.m. or 11:15 p.m. Barrett admitted he was drunk on the night of the accident, but said he did not drive a car on that night.

## II.

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Woolridge positively identified Barrett as the driver of the car that struck Clay's truck. Woolridge also stated that the police arrived at the accident about five or ten minutes after the accident occurred. Officer Jackson testified that he was dispatched to the accident at 2:00 a.m. and arrived at the accident at 2:18 a.m. The trial judge explicitly found that Jackson's testimony was "the believable evidence about the time" of the accident. Moreover, Jackson's testimony corroborates Woolridge's testimony concerning the arrival of the police. Therefore, Supry's testimony concerning the car parked near

4

Barrett's trailer at 1:15 a.m. did not provide Barrett with an alibi because the accident had not yet occurred when Supry observed the car.

Barrett also attacks Woolridge's credibility because Woolridge did not see Barrett actually enter the door of the blue trailer. Although Woolridge could not see the door of the blue trailer, the fact finder could reasonably have inferred from Woolridge's testimony, and from Woolridge's later identification of Barrett in the trailer, that Barrett did enter the trailer when Woolridge saw him walk toward it.

The trial judge considered and determined the credibility of the witnesses and the weight to be given their testimony. "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). Although the blue and silver car was not registered to Barrett, and no keys to this car were found in Barrett's possession, from Woolridge's testimony of the incident, and from his positive identification of Barrett, the trial judge could conclude beyond a reasonable doubt that Barrett was the driver of the car that struck Clay's truck.

Barrett also asserts that it is "just as possible that Woolridge was a party to a hit and run that evening and created an alibi for himself or others during the time period between the accident and his return to the scene . . . ." However, Barrett's

5

suggested hypothesis of innocence does not flow from the evidence.  No evidence supports it.  The evidence supports the trial judge's finding that Barrett drove the car that struck Clay's truck.  "On appeal, we only need to find that the judgment is supported by credible evidence and is not plainly wrong.  We need not force the Commonwealth 'to exclude every possible theory or surmise presented by the defendant.'"  Purdy v. Commonwealth, 16 Va. App. 209, 212, 429 S.E.2d 34, 36 (1993) (citation omitted).

For the reasons stated, the judgment of the trial court is affirmed.


Affirmed.