COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Senior Judge Duff
Argued at Richmond, Virginia


WILLIAM C. PENLEY

MEMORANDUM OPINION[*]

v.   Record No. 1880-97-2       BY JUDGE CHARLES H. DUFF
                                 SEPTEMBER 8, 1998

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

John M. Wright, Jr. (Downs and Wright, on
brief), for appellant.

Pamela A. Rumpz, Assistant Attorney General
(Mark L. Earley, Attorney General; Steven A.
Witmer, Assistant Attorney General, on
brief), for appellee.


William C. Penley appeals his convictions for attempted taking of indecent liberties with children. He asserts that the evidence was insufficient to prove an attempt, and insufficient to prove that he was acting with lascivious intent. We disagree and affirm.

"Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

So viewed, the evidence proved that on the morning of

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

November 6, 1996, thirteen-year-old J.G. and her eleven-year-old sister, H.G., were waiting for their school bus when Penley drove by them. Penley turned around in a driveway, then drove back to the girls and asked "[h]ave you ever seen a dick before?" When the girls turned away, he said "[n]o, I'm serious, have you ever seen one?" J.G. then said "[n]o," and Penley responded "[w]ould you like to see one?" Both girls responded "[n]o."

At that moment, a car driven by the girls' neighbor approached the area, and Penley drove away quickly. J.G. testified that Penley looked in his rear view mirror as the neighbor's car approached. Because of his position in the car, the sisters could not see Penley's body much below his shoulders, and Penley never got out of the car.

Kay Miles testified that on Monday, November 4, 1996, she noticed an unfamiliar car backing out of her neighbor's driveway. The driver of the car, whom Miles subsequently identified as Penley, then backed in and out of Miles' driveway. Miles proceeded out of her driveway on her way to drop her daughter off at the school bus stop. She testified that Penley went in the same direction, that he subsequently pulled in and out of another driveway before finally parking his car on the side of the road. Miles stated that Penley parked facing--and approximately twenty feet away from--Miles' daughter's bus stop. Although Penley did not get out of his car, Miles testified that he appeared to stare at the children as they boarded the school bus. Miles testified

that her daughter's bus stop was approximately three miles from J.G. and H.G.'s bus stop.

Investigator Morris arrested Penley on November 12, 1996, and questioned him regarding the November 6, 1996 incident. Penley explained that he had been in the victims' neighborhood while looking for his former boss. He initially told Morris that he stopped and spoke to the victims because he thought he heard them call him a "dick." Penley subsequently agreed with Morris that it would have been impossible for him to hear the girls say anything when he first drove by because his car window nearest to them was closed, and he was playing his radio.

Penley testified that he thought he heard one of the girls say "dick" and that he made the offending statements to the victims because he was frustrated and angry. In a written statement provided to Morris on November 12, 1996, Penley indicated that he confronted the victims because he "was bored and curious." Penley further wrote that he had driven away from the victims quickly because he was "very nervous" and that he realized what he had done "was wrong."

Penley admitted being in Miles' neighborhood on November 4, 1996, and being behind a bus that morning, although he denied purposely following it. He further admitted that he was not in the Brookland Middle School area (where both victims and Miles' daughter attended school) on Tuesday and that he knew Tuesday was a school holiday.

In finding Penley guilty, the trial judge stated that he did not believe Penley's testimony.  The trial judge further found that the victims, Miles, and Morris had testified credibly.

A.  Sufficiency of the Evidence to Prove an Attempt

A defendant is guilty of taking indecent liberties if he, "with lascivious intent," exposes his genital parts to a child under the age of fourteen years to whom he is not married.  Code § 18.2-370.  To convict a defendant of attempted taking of indecent liberties, the Commonwealth must prove "the intention to commit the crime, and the doing of some direct act towards [sic] its consummation which is more than mere preparation but falls short of execution of the ultimate purpose."  Sizemore v. Commonwealth, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978).

"To prove an attempt, the Commonwealth must demonstrate a direct, ineffectual act that 'must go beyond mere preparation and be done to produce the intended result.'"  Jordan v. Commonwealth, 15 Va. App. 759, 762, 427 S.E.2d 231, 233 (1993) (citation omitted).  "'[I]t may be said that preparation consists in devising or arranging the means or measures necessary for the commission of the offense and that the attempt is the direct movement toward the commission after the preparations are made.'" Granberry v. Commonwealth, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946) (citation omitted).  "'[T]here must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances

- 4 -

independent of the will of the attempter, and the act must not be equivocal in nature.'" Lewis v. Commonwealth, 15 Va. App. 337, 340, 423 S.E.2d 371, 373 (1992) (citation omitted).

The evidence proved that, after passing the victims, Penley turned around in a driveway and returned to the location where they were standing. He asked them twice if they had ever seen a "dick," and when they responded "no," asked if they wanted to see one. This latter inquiry reasonably could be interpreted as an attempt by appellant to entice the victims to approach his car. The trial court could infer beyond a reasonable doubt that this crime would have been consummated had a neighbor not approached. Penley's actions went beyond mere preparation, and instead, constituted "direct movement" toward completion of the crime.

B. Sufficiency of the Evidence Proving Lascivious Intent

> The word "lascivious" is not defined in the statute, and must therefore be given its ordinary meaning in determining the legislative intent in the use of the word in this particular statute. As so determined, the word "lascivious" describes a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite.

McKeon v. Commonwealth, 211 Va. 24, 27, 175 S.E.2d 282, 284 (1970).

The Supreme Court has identified four factors that can be utilized in proving lascivious intent: 1) whether the defendant was sexually aroused when he performed the act; 2) whether he made any gestures to himself or the victim; 3) whether he made

any improper remarks to the victim; and 4) whether he asked her to do anything wrong.  See Campbell v. Commonwealth, 227 Va. 196, 199, 313 S.E.2d 402, 404 (1984).  "[P]roof of any one factor can be sufficient to uphold a conviction under [Code § 18.2-370]."  Id. at 200, 313 S.E.2d at 404.

"Because direct proof of intent is often impossible, it must be shown by circumstantial evidence."  Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988).  "When a conviction is based upon circumstantial evidence, such evidence 'is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'"  Hollins v. Commonwealth, 19 Va. App. 223, 229, 450 S.E.2d 397, 400 (1994) (citation omitted).  "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant."  Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

"The fact finder is not required to believe testimony that is inconsistent with the facts, may reject testimony that has been impeached, and may rely solely upon circumstantial evidence to prove an offense, provided the circumstances point unerringly to prove the necessary elements of the offense."  Doss v. Commonwealth, 23 Va. App. 679, 685, 479 S.E.2d 92, 95 (1996).  "[F]light may be considered as evidence of guilt . . . ."  Hope

v. Commonwealth, 10 Va. App. 381, 386, 392 S.E.2d 830, 833 (1990) (en banc).  Likewise, "[a] defendant's false statements are probative to show he is trying to conceal his guilt, and thus [are] evidence of his guilt."  Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991).

Penley's questions to the thirteen-year-old and eleven-year-old victims, asking them if they had ever seen a "dick" and if they wanted to see one, were "improper remarks" and constituted competent, circumstantial evidence of lascivious intent.  Penley then drove off quickly when a car approached.  Miles' testimony that Penley had been in her neighborhood on November 4, 1996 and that he had watched several young girls board a school bus was also probative of his intent.  Finally, Penley admitted that, while he was in the area on Monday and Wednesday, he did not go there on November 5, which he knew to be a school holiday.

Penley gave inconsistent statements to the police regarding the incident.  At first, he alleged that the girls had called him a "dick."  He then conceded that he would not have been able to hear anything they said when he drove by.  He then wrote out a statement wherein he indicated that he had said these things because he was "bored" and "curious."  At trial, Penley testified that he made the remarks because he was "frustrated" and "angry."  He also provided a suspect explanation for why he was in the neighborhood in the first place.  Accordingly, the Commonwealth's

evidence was sufficient to prove Penley acted with lascivious intent.

The trial judge had the opportunity to observe the demeanor of the witnesses. The judge specifically stated that he found Penley's testimony incredible and that he believed the testimony of the victims, Miles, and Morris. "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Penley was guilty of attempted taking indecent liberties with a child. Accordingly, the convictions appealed from are affirmed.

Affirmed.

Benton, J., dissenting.

"It is well established that an attempt is composed of two elements:  the intention to commit the crime, and the doing of some direct act towards its consummation which is more than mere preparation but falls short of execution of the ultimate purpose."  Sizemore v. Commonwealth, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978).  To convict William C. Penley of attempting to take indecent liberties with a child, the Commonwealth had to prove beyond a reasonable doubt that Penley attempted to expose his genital parts to a child under fourteen years of age.  See Code § 18.2-370(1).  The evidence was insufficient to satisfy that burden of proof.

Although the evidence might be sufficient to prove intent to commit the crime, see Campbell v. Commonwealth, 227 Va. 196, 199-200, 373 S.E.2d 402, 404 (1984) (defendant's improper remarks to the victim are sufficient to prove lascivious intent), intent is but one element of the attempted offense.  The evidence also must prove "an overt but ineffectual act committed in furtherance of the criminal purpose."  Howard v. Commonwealth, 221 Va. 904, 906, 275 S.E.2d 602, 603 (1981).  "While it is not necessary to show that the conduct was thwarted at the instant of consummation, the evidence must prove that the preparation proceeded 'far enough towards the accomplishment of the desired result to amount to the commencement of the consummation.'"  Lewis v. Commonwealth, 15 Va. App. 337, 340, 423 S.E.2d 371, 373

(1992) (quoting <u>Barrett v. Commonwealth</u>, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969)).

Thus, the evidence "must demonstrate a direct, ineffectual act that 'must go beyond mere preparation and be done to produce the intended result.'" <u>Jordan v. Commonwealth</u>, 15 Va. App. 759, 762, 427 S.E.2d 231, 233 (1993) (citation omitted). "'Preparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature.'" <u>Lewis</u>, 15 Va. App. at 339-40, 423 S.E.2d at 373 (citation omitted).

Penley committed no act that can be deemed "beyond mere preparation." The girls testified that they could only see Penley from the shoulders or stomach up. No evidence proved he was undressed or undressing. The girls testified that Penley never attempted to get out of the car. He did not ask the girls to get into the car, and he did not offer them anything to get them to come closer. No evidence proved that Penley made any gestures such that would indicate he was about to expose his genitals.

Because the record is devoid of any evidence that Penley committed any "acts that can be characterized as well calculated to accomplish the intended result" of exposing his genitals to the girls, <u>Tharrington v. Commonwealth</u>, 2 Va. App. 491, 496, 346

S.E.2d 337, 340 (1986), I would hold that the evidence was insufficient to prove Penley committed a direct act toward the commission of the offenses.