COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Kelsey and Powell
Argued at Richmond, Virginia


HUNTER LEE, III

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2217-10-2                       JUDGE CLEO E. POWELL
                                                       AUGUST 2, 2011
FREDERICKSBURG DEPARTMENT
 OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                            Gordon F. Willis, Judge

            Timothy W. Barbrow for appellant.

            Joseph A. Vance, IV, for appellee.

            (Sonya B. Costanzo, on brief), Guardian *ad litem* for the infant
            children.


        On September 22, 2010, the trial court terminated the residual parental rights of Hunter

Lee, III ("father") to his children, Y.L. and J.L., pursuant to Code § 16.1-283(C).  On appeal,

father argues that the Fredericksburg Department of Social Services ("DSS") failed to prove by

clear and convincing evidence that termination of his parental rights was in the best interests of

the children.  He also asserts that DSS failed to prove that it offered services to him and that he

failed to remedy the conditions which led to the children being removed from the home within a

reasonable period of time.  For the reasons that follow, we disagree and affirm the trial court's

decision.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

Father was incarcerated when Y.L. and J.L., and their mother's other two children, were removed from her home in February of 2008. DSS filed petitions to terminate father's parental rights, but the Circuit Court for the City of Fredericksburg denied these petitions in August 2009. In October 2009, the DSS formulated a new plan with the goal of returning the children to the home. That plan included requirements for father to complete such as attend a parenting class, obtain and maintain employment, maintain safe and stable housing, attend family therapy and visitation, cooperate with a Post Attachment Specialist to understand the children's emotions and behaviors, secure appropriate day care, participate in IEP and FAPT meetings, cooperate with his probation, and submit to random urine screens.

Father was released from prison in February 2010. He requested visitation with his children but DSS denied this request.

On February 5, 2010, DSS again filed petitions to terminate the parental rights of father. On May 13, 2010, the Juvenile and Domestic Relations District Court for the City of Fredericksburg granted these petitions. Father appealed that decision to the circuit court.

At the hearing in the circuit court, DSS employee Natalie Newton testified that she met with father on March 8, subsequent to a juvenile and domestic relations district court hearing, to offer him services through their department. He was offered parenting classes, substance abuse counseling, and a psychological substance abuse evaluation. Father initially made an appointment for the psychological social evaluation with the Rappahannock Area Community Services Board on April 21, 2010, but failed to keep that appointment. Newton then referred father to another service provider, where he subsequently received psychological counseling. As a result of his psychological evaluation, father was referred for a neuropsychological evaluation, mental health support services, parenting classes, individual psychotherapy, and a physical

examination. As of the hearing, Newton had not received confirmation that father completed any of those referrals. Newton had no information to indicate that father completed a parenting class but did know that he attended at least several meetings of an interactive group parenting program. This, however, was not the parenting program that DSS wanted him to attend; they wanted him to attend an instructional parenting class. Though she had not discussed it with him in several months, when they last spoke, father had not obtained stable housing.

Father testified that he complied as best he could with what Newton told him to do but it was difficult for him to comply while job hunting to pay the expenses he accumulated while in prison. He testified that he attended a parenting class although it was not the one Newton recommended. He also testified that he got lost the first time he was scheduled for a psychological exam and missed the appointment. Father showed that he was employed and that his wages were being garnished to comply with child support. He also testified that he is losing his job because he is a convicted felon and the company that purchased the one at which he works does not employ felons. He testified that he was looking for work and had some leads and currently had housing with his aunt. He reported that he is on supervised probation and undergoes random drug testing. He took responsibility for being in prison and testified that the separation from his children was very hard on him. Father testified that he would do whatever it took to remain in the children's lives and to stay out of prison.

After the hearing *ore tenus*, the circuit court held that clear and convincing evidence proved that father,

> without good cause, has been unwilling or unable within a
> reasonable period of time not to exceed twelve (12) months from
> the date the children were placed in foster care to remedy
> substantially the conditions which lead to or required continuation
> of the children's foster care placement, notwithstanding the

> reasonable and appropriate efforts of social, medical, mental health or rehabilitative agencies to such end.

The court terminated father's parental rights.

## II. ANALYSIS

> "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citations omitted). Where the trial court hears the evidence ore tenus, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it. See Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986) (citation omitted).

Roanoke City Dep't of Soc. Servs. v. Heide, 35 Va. App. 328, 336, 544 S.E.2d 890, 893-94 (2001). "Where a trial court makes a determination which is adequately supported by the record, the determination must be affirmed." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 796 (1990).

The petitions to terminate Lee's parental rights were made under Code § 16.1-283(C). Based on the findings and holding of the trial court, it is clear that the determination whether to terminate father's parental rights was made under Code § 16.1-283(C)(2). Pursuant to that code section, a trial court may terminate the rights of a parent to a child upon clear and convincing evidence that it is in the best interests of the child and that the parent

> without good cause, [has] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2). Decisions to terminate parental rights under Code § 16.1-283(C)

> hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of

- 4 -

the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (citation omitted).

Father first argues that the DSS failed to prove in the trial court by clear and convincing evidence that it was in the best interests of his children that his parental rights be terminated.

The best interest of the child is the paramount consideration in cases involving the termination of a parent's residual parental rights. Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). Nevertheless, "'the rights of parents may not be lightly severed but are to be respected if at all consonant with the best interests of the child.'" Ward v. Faw, 219 Va. 1120, 1124, 253 S.E.2d 658, 661 (1979) (quoting Malpass v. Morgan, 213 Va. 393, 400, 192 S.E.2d 794, 799 (1972)). In considering the matter before us, we must have a "respect for the natural bond between children and their natural parents. The preservation of the family, and in particular the parent-child relationship, is an important goal for not only the parents but also government itself. . . . Statutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship."

Richmond Dep't of Soc. Servs. v. L.P., 35 Va. App. 573, 580, 546 S.E.2d 749, 752-53 (2001) (quoting Weaver v. Roanoke Dep't of Human Res., 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Here, the evidence in the record proves that Lee was arrested for and convicted of possessing drugs in the same home that the children lived in. Y.L. was not yet born when he was incarcerated. Newton testified that father did not complete an acceptable parenting class. He

also did not complete the neuropsychological exam, mental health support services, individual psychotherapy, and physical examination that were recommended. In addition, father had no place for the children to live should they be returned to him. Moreover, at the time of the trial, father was living with an aunt who had filed a petition for custody that was denied after a home study was conducted. Most importantly, however, was that when specifically asked, father was unable to tell the trial court how long it would take for him to be in a position to have the children returned to his care.

Though Lee testified on his own behalf, the trial court clearly disbelieved his testimony and accepted that of witnesses on behalf of DSS. "It is well established that the trier of fact ascertains the witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (citing Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986)).

> We may not "'substitute our judgment for that of the trier of fact,'" Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (quoting Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998)), nor may we "reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because we have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).

Merritt v. Commonwealth, 57 Va. App. 542, 555, 704 S.E.2d 158, 165 (2011). The trial court's determination that DSS presented clear and convincing evidence that termination of father's parental rights was in the children's best interest is adequately supported by the record and, therefore, must be affirmed.

Father next contends that DSS failed to prove by clear and convincing evidence that DSS offered him services that he failed to comply with within a reasonable time period.

The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care "drift" and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement. "This provision protects the family unit and attendant rights of both parents and child, while assuring resolution of the parent/child relationship without interminable delay." Lecky v. Reed, 20 Va. App. 306, 312, 456 S.E.2d 538, 540 (1995). The legislation established a reasonably presumptive time frame of twelve months for parents to receive rehabilitative services to enable them to correct the conditions that led to foster care placement. "The statute clearly contemplates that efforts to resolve the 'conditions' relevant to termination are constrained by time." Id. If the parent fails to substantially remedy those conditions within twelve months the court may act to prevent the child from lingering in foster care. "Absent 'good cause,' a parent or parents receiving the 'reasonable and appropriate' services of 'rehabilitative agencies' must 'remedy substantially' the 'conditions which led to . . . foster care' of the child in a 'reasonable period not to exceed twelve months.'" Id.

The time limit does not, however, temporally restrict the trial court's consideration to events that occurred between the parent and child only during that discrete twelve-month time period to the exclusion of what may have occurred before and after those dates. See Heide, 35 Va. App. at 337, 544 S.E.2d at 894.

L.G. v. Amherst County Dep't of Soc. Servs., 41 Va. App. 51, 56-57, 581 S.E.2d 886, 889

(2003). To construe the statute in such a way

"would deny the fact finder the opportunity to evaluate the present best interests of the child. The trial court may discount the parent's current 'progress' if the best interests of the child would be served by termination. However, . . . the trial court may determine that a parent's delayed, but nonetheless substantial, progress may overcome the time delay. We will not deprive the trial court of the opportunity to weigh the rights of the parents and the best interests of the child."

Id. at 57, 581 S.E.2d at 889-90 (quoting Heide, 35 Va. App. at 337, 544 S.E.2d at 894).

Here, the time in which father's children have been in foster care has exceeded one year.

As stated above, he did not avail himself of the services offered to him by DSS. As an

explanation of his failure to utilize the services, father argues that he was incarcerated for much of the time at issue, but this Court has previously held that,

> we find no merit in [the father's] contention . . . that Code § 16.1-283(C)(2) required the Department to offer him services during his incarceration. It would be patently unreasonable to require the Department, under such circumstances, to continue to offer such services. . . . [A]s long as he was incarcerated, the Department would have no avenue available to offer [the father] services aimed at assisting him in regaining custody of the child.

Harrison v. Tazewell County Dep't of Soc. Servs., 42 Va. App. 149, 163-64, 590 S.E.2d 575, 583 (2004). Thus, the trial court's determination that father was not making sufficient progress is not without evidence to support it.

## III. CONCLUSION

For the foregoing reasons, we affirm.

<u>Affirmed.</u>