COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Frucci
Argued at Norfolk, Virginia

JENMALL DONTE SIMMONS

                                                   MEMORANDUM OPINION[*] BY
v.       Record No. 2219-23-1           JUDGE FRANK K. FRIEDMAN
                                             APRIL 22, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Robert G. MacDonald, Judge

Erik A. Mussoni, Senior Trial Attorney (Chesapeake Public
Defender's Office, on briefs), for appellant.

Victoria Johnson, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

The trial court convicted Jenmall Donte Simmons of carrying a concealed weapon in

violation of Code § 18.2-308 and sentenced him to twelve months in jail with eight months

suspended. On appeal, Simmons challenges the sufficiency of the evidence to support his

conviction, arguing that the firearms were not "about his person" as required to sustain a conviction

under Code § 18.2-308.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *McGowan v.

Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469,

472 (2018)).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Simmons was charged with carrying a concealed weapon in violation of Code § 18.2-308. He pleaded not guilty to the charge. Simmons waived his right to a jury trial, so a bench trial was conducted.

At trial, Officer Miller of the Chesapeake Police Department testified that on June 1, 2023, he was searching for a black Audi that was reported stolen. It was approximately 9:00 p.m. and dark outside. Miller observed the suspected vehicle, a black Audi, that was backed into a "parking pad" in front of a townhouse. When Miller noticed the vehicle, it was already parked. From his patrol car, Miller attempted to "verify things and have backup com[e]," at which point a male, later identified as Simmons, exited the vehicle and went into a residence. No one else exited the vehicle.

Miller immediately went to the residence that Simmons had entered and knocked. A woman answered the door, and Miller explained that he wanted to talk to the man that just entered that residence. The woman closed the door, and then Simmons opened the door.[1] Miller asked the pair if there were any other males in that residence, and both responded no. Miller informed Simmons that he believed the vehicle was stolen, and he asked Simmons to step out of the residence for further questioning. Simmons told Miller that he had just returned from Maryland where he purchased the vehicle for $7,000 from a third party on Facebook. Police ultimately determined that the vehicle tags displayed on the vehicle, driven by Simmons, did not match and were stolen. Another person was the registered owner of the vehicle.

Simmons was arrested. When asked if there were any firearms in the vehicle, Simmons stated that there were two firearms on the driver's side of the vehicle. The woman in the residence had the keys to the vehicle and unlocked it for Miller, who observed a "bulge" under the floor mat on the driver side. Miller removed the mat and found two firearms. Prior to removing the mat, the

---

[1] Approximately two minutes elapsed from the time Simmons exited the vehicle to the time Miller contacted the female and Simmons at the residence.

firearms were not in plain view or visible to common observation. Both firearms were tested and found to be in mechanical operating condition.

After the Commonwealth presented its evidence, Simmons made a motion to strike, arguing that the Commonwealth failed to prove that the firearms were "about his person" as required under Code § 18.2-308. The trial court denied Simmons' motion to strike. Simmons elected not to present any evidence in his defense. Simmons then renewed his motion to strike. The trial court again denied the motion.

In ruling on the motions to strike, the trial court—as factfinder—observed that there was no evidence indicating how long Simmons was in the vehicle with the concealed weapons. The court noted that "there is no observation that the officer makes of the defendant prior to his exit. It is simply that he exited the vehicle," and "I have no testimony whatsoever from the officer regarding any activity or conduct or any observation whatsoever prior to his exit." The court also observed that "[t]he only evidence before me is that he [Simmons] just gets out of the car, closes the door, and goes into the house. Then the officer immediately goes to—very soon thereafter goes to the door, and within 2 minutes, the defendant appears."

After considering the evidence, the trial court convicted Simmons of violating Code § 18.2-308. Simmons was sentenced to twelve months of incarceration, with eight months suspended. Simmons now appeals.

STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan*, 72 Va. App. at 521 (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original)

(quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Lucas v. Commonwealth*, 75 Va. App. 334, 342 (2022) (quoting *McGowan*, 72 Va. App. at 521).

"When assessing whether the circumstantial evidence excludes a reasonable hypothesis of innocence, the Commonwealth, 'need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.'" *Id.* at 348 (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)). "The reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)). And "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Id.* (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)).

"We review questions of statutory construction de novo." *Evans v. Commonwealth*, 299 Va. 330, 334 (2020); *see also Dietz v. Commonwealth*, 294 Va. 123, 132 (2017) (explaining that disputes over the proper interpretation of a statute present an issue of law).

ANALYSIS

The trial court erred when it denied Simmons' motion to strike.

Simmons, relying on *Pruitt v. Commonwealth*, 274 Va. 382 (2007), contends that the evidence was insufficient to establish that he violated Code § 18.2-308 because the Commonwealth failed to prove that the firearms were "about his person" for an appreciable amount of time.

- 4 -

Simmons also contends that the firearms were not "about his person" where he exited the vehicle and entered his residence before any interaction with law enforcement.

The Commonwealth, on the other hand, argues that Simmons' conviction should be affirmed "[b]ecause a reasonable factfinder could infer . . . that the firearm was about Simmons' person and within his reach for prompt and immediate use during the period of time it was concealed under the driver's seat floormat while he was in the vehicle . . . ."

A.  The meaning of "about his person" under Code § 18.2-308.

The relevant statute here states: "If any person carries *about his person*, hidden from common observation, (i) any pistol . . . he is guilty of a Class 1 misdemeanor."  Code § 18.2-308 (emphasis added).  "[T]he phrase 'about the person' carries with it over a century of jurisprudence." *Hunter v. Commonwealth*, 56 Va. App. 50, 62 (2010).

"Whether a weapon is upon a person or is readily accessible are largely questions of fact that must be left to reasonable inferences drawn by the fact finder from the facts and circumstances of the case."  *Leith v. Commonwealth*, 17 Va. App. 620, 621 (1994), *superseded by statute on other grounds as stated in Hodges v. Commonwealth*, 64 Va. App. 687, 696 (2015).

> The purpose of the [concealed carry] statute was to interdict the practice of carrying a deadly weapon about the person, concealed, and yet so accessible as to afford prompt and immediate use.  "About the person" must mean that it is so connected with the person as to be readily accessible for use or surprise if desired.

*Schaaf v. Commonwealth*, 220 Va. 429, 430 (1979) (quoting *Sutherland v. Commonwealth*, 109 Va. 834, 835 (1909)).  "The traditional purpose of [concealed weapon] statutes is generally recognized as protection of the public by preventing individuals from having, readily available for use, weapons of which others are unaware."  *Leith*, 17 Va. App. at 622 (alteration in original) (quoting *Mun. of Anchorage v. Lloyd*, 679 P.2d 486, 487 (Alaska Ct. App. 1984)).

"Accessibility of a concealed weapon for 'prompt and immediate use' is clearly the evil proscribed by the statute." *Watson v. Commonwealth*, 17 Va. App. 124, 127 (1993) (quoting *Sutherland*, 109 Va. at 835). "Judicial use of the term 'readily' simply recognizes that the availability contemplated by the statute means 'in a ready manner' or 'without much difficulty.'" *Id.* (quoting *Webster's Ninth New Collegiate Dictionary* 980 (1989)). And while "the location of a weapon is a significant circumstance for the court to consider in weighing accessibility[,] . . . a weapon is not . . . inaccessible 'as a matter of law' if available only upon noticeable 'body motion.'" *Id.*

In *Schaaf*, the Supreme Court of Virginia upheld a conviction for carrying a concealed weapon in violation of Code § 18.2-308, where the defendant carried a firearm in the bottom of a handbag while attempting to enter a courthouse. 220 Va. 429. The Court in *Schaaf* explained that its "decision accords with the rule of a majority of jurisdictions" that have "h[e]ld that the carrying of a weapon in a handbag or other similar article, held in the hand or placed under the arm, constitutes concealment of a weapon on or about the person." *Id.* at 432. The Court noted that "[a] pistol carried in such a bag is not only near and about the carrier's person, hidden from common observation, but in some handbags it is so accessible that it could be fired without being removed therefrom."[2] *Id.* at 431.

In *Watson*, this Court revisited the meaning of "about his person" and upheld a conviction for carrying a concealed firearm, where the defendant was driving a vehicle, stopped by law enforcement due to an "equipment violation," and a firearm was ultimately discovered under the driver's floor mat. 17 Va. App. at 125. At trial, the arresting officer testified that the firearm that was under the driver's floor mat was "easily accessible," and the defendant had been in the vehicle

---

[2] Our Supreme Court recently observed in *Myers v. Commonwealth*, 299 Va. 671, 677 (2017), that "[p]erhaps the time will come for us to reconsider the reach of *Schaaf* or to recalibrate its application, but this is not the case in which to do so."

with the firearm throughout the traffic stop. *Id.* In affirming the conviction, we concluded that "the loaded pistol was a weapon 'readily accessible' to defendant with only the slightest movement and, thus, 'carrie[d] about his person' in violation of Code § 18.2-308." *Id.* at 127 (alteration in original).

Simmons invokes *Pruitt*, 274 Va. 382, to support his contention that the firearms were not "about his person" as required by the statute under these circumstances. In that case, Pruitt, who testified at trial, placed his firearm on the passenger seat in plain view as he drove to work.[3] *Id.* at 384-85. While driving, he was involved in an automobile accident, causing the firearm to fall off the seat onto the floor. *Id.* at 384. Pruitt, suspecting his car would be towed, placed the firearm in the center console compartment and immediately exited the vehicle. *Id.* at 385. When law enforcement arrived at the scene, Pruitt was outside his vehicle with the doors and the windows closed. *Id.* Our Supreme Court held that Pruitt's firearm was not readily accessible, concluding:

> There simply is no evidence demonstrating that Pruitt remained in the vehicle for any appreciable length of time beyond that necessary to place his pistol in the console compartment. Granting all reasonable inferences to the Commonwealth, the evidence established that Pruitt placed the pistol inside the console compartment as he was exiting his vehicle. Once he exited the vehicle and closed the door, the pistol was no longer accessible to him so as to afford "prompt and immediate use."

*Id.* at 388-89.

This Court, in two unpublished decisions, grappled with the meaning of "about his person" in light of *Pruitt*. *Compare Johnson v. Commonwealth*, No. 0877-10-3, 2010 Va. App. LEXIS 475 (Dec. 14, 2010), *with Ruth v. Commonwealth*, No. 1430-10-2, 2011 Va. App. LEXIS 317

---

[3] In *Pruitt*, the trial court accepted the defendant's testimony. 274 Va. at 385 (explaining that "the circuit court stated that it accepted Pruitt's testimony that the pistol had not been concealed prior to the accident and his explanation as to why he had placed the pistol in the console compartment").

(Oct. 18, 2011).[4] In *Johnson*, we affirmed defendant's conviction under Code § 18.2-308, where he was a passenger in the backseat of a vehicle and was near his concealed weapon. Slip op. at 1-2, 2010 Va. App. LEXIS 475, at *1-2. The vehicle had four occupants in it, and when law enforcement approached the stopped vehicle, all four occupants got out. *Id.* at 2, 2010 Va. App. LEXIS 475, at *2. When law enforcement searched the vehicle, they found a concealed weapon—covered with a shirt—in the backseat "immediately adjacent to where appellant had been sitting." *Id.* The defendant admitted he owned the firearm but denied concealing it. *Id.* At trial, Johnson and two of the other occupants of the vehicle testified that the shirt was not concealing the firearm when they exited the vehicle. *Id.* In affirming Johnson's conviction, we observed that "when [Johnson] sat in the back seat of the vehicle, in close proximity to the concealed weapon, the offense was complete." *Id.* at 6, 2010 Va. App. LEXIS 475, at *9. And "it [was] reasonable for the trial court to infer the weapon was concealed while [Johnson] sat in close proximity to it." *Id.* at 6, 2010 Va. App. LEXIS 475, at *9-10. We also noted that "the trial court clearly did not accept that testimony [by the defendant]." *Id.* at 6, 2010 Va. App. LEXIS 475, at *9; *see also Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt.").

In *Ruth*, on the other hand, this Court reversed defendant's conviction under Code § 18.2-308, holding that there was insufficient evidence that the concealed firearm was "about his person." Slip op. at 1, 2011 Va. App. LEXIS 317, at *1. In *Ruth*, the defendant was at an apartment complex and hid his firearm under a rain catch. *Id.* at 2, 2011 Va. App. LEXIS 317, at *2. Ruth then hung out with a friend in the complex for about 45 minutes, periodically checking

---

[4] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012) (citing Rule 5A:1(f)).

on the firearm to ensure no kids accessed it. *Id.* at 2, 2011 Va. App. LEXIS 317, at *3. As the defendant was leaving his friend's residence, he went to retrieve the firearm under the rain catch, at which point he noticed law enforcement watching him. *Id.* at 2-3, 2011 Va. App. LEXIS 317, at *3. Ruth was bent over and three feet from the concealed firearm when he noticed the law enforcement officer; as a result, he left the firearm in its hiding place and walked away. *Id.* at 3, 2011 Va. App. LEXIS 317, at *3-4. After he walked away, law enforcement discovered the firearm concealed under the rain catch. *Id.* at 2, 2011 Va. App. LEXIS 317, at *2. Law enforcement then found Ruth one block away from the apartment complex, and he admitted that he owned the firearm. *Id.*

Based on these facts, we found that the evidence was insufficient to prove that the firearm was "about his person," and we reversed defendant's conviction. *Id.* at 6, 2011 Va. App. LEXIS 317, at *10. We observed that "[t]he facts of *Pruitt* are similar to the instant case," and thus, "we h[e]ld that the evidence was insufficient to permit a reasonable trier of fact to conclude that the gun was 'about the person' of [Ruth] when he hid it under the rain catch and walked away." *Id.* at 6, 2011 Va. App. at *9-10. In reversing the conviction, we explained that "[a]s in *Pruitt*, no evidence showed that [Ruth] remained in the proximity of the rain catch and the hidden gun 'for any appreciable length of time beyond that necessary to place his pistol' under the rain catch." *Id.* at 6, 2011 Va. App. at *10 (quoting *Pruitt*, 274 Va. at 388).

B. The evidence was insufficient to support Simmons' conviction.

Whether a firearm is "about his person" is a fact specific inquiry. *Pruitt* and *Watson* are the two cases both sides emphasize. And the facts in this case are distinguishable from both *Pruitt* and *Watson*. While we ultimately find *Pruitt* particularly instructive, we acknowledge that it is not directly on point. For instance, unlike in *Pruitt*, where the defendant testified, 274 Va. at 385, here Simmons did not testify, and thus, there is no evidence—one way or the other—that indicates how

long Simmons was in the vehicle with the concealed firearms. This case is unlike *Watson* because here Simmons exited the vehicle and entered the residence before any interaction with law enforcement. In *Watson*, although the firearm was under the floor mat like this case, Watson remained in his vehicle with the concealed weapon during his interaction with law enforcement, and thus, Watson had immediate access to the concealed firearm, such that our Court had no trouble concluding that the firearm was "about his person." 17 Va. App. at 125, 127.

The Commonwealth contends that it is a reasonable inference that Simmons was in the vehicle with the concealed firearms for an "appreciable length of time beyond that necessary to [conceal] his [firearms under the floor mat]." *Pruitt*, 274 Va. at 388. We disagree that such an inference is reasonable where no evidence supports it. Here, the trial court acknowledged that there was no evidence indicating when Simmons concealed the firearms or for how long he was in the vehicle with the firearms concealed.

Where the factfinder stated that there was no evidence on this question, we hold that the conviction was based on speculation and cannot stand. *See, e.g.*, *Littlejohn v. Commonwealth*, 24 Va. App. 401, 414 (1997) ("[E]vidence is not sufficient to support a conviction if it engenders only a suspicion or even a probability of guilt. Conviction cannot rest upon conjecture." (alteration in original) (quoting *Hyde v. Commonwealth*, 217 Va. 950, 955 (1977))); *Molina v. Commonwealth*, 47 Va. App. 338, 369 ("To justify conviction of a crime, it is insufficient to create a suspicion or probability of guilt. Rather, the burden is upon the Commonwealth to prove every essential element of the offense beyond a reasonable doubt." (quoting *Moore v. Commonwealth*, 254 Va. 184, 186 (1997))), *aff'd*, 272 Va. 666 (2006). The lack of this evidence is particularly problematic since the Commonwealth had the burden of proof as to all elements of the offense, including that the concealed firearm was "about his person." *See, e.g.*, *Williams v. Commonwealth*, 57 Va. App. 341, 348 (2010) ("Due process requires the prosecution 'to prove beyond a reasonable doubt every fact

necessary to constitute the crime charged.'" (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 685 (1975))).

Here, there was no evidence presented that would allow a factfinder to infer that Simmons was with the concealed firearms for an appreciable amount of time. Thus, the factfinder was left to speculate as to when the firearms were concealed. *See Potts v. Commonwealth*, 12 Va. App. 1093, 1097 (1991) (explaining that an inference is unreasonable if not supported by evidence). And it is just as likely, on this record, that Simmons exited the vehicle immediately upon concealing the firearms (just like in *Pruitt*), as it is that he placed the firearms under the mat and then stayed in the car for an extended period. *See Bridgeman v. Commonwealth*, 3 Va. App. 523, 528 (1986) (explaining that "[a] conviction based upon a mere suspicion or probability of guilt, however strong, cannot stand"); *Sutphin v. Commonwealth*, 1 Va. App. 241, 248 (1985) (noting that "[w]henever the evidence leaves indifferent which of several hypotheses is true, or merely establishes only some finite probability in favor of one hypothesis, such evidence does not amount to proof of guilt beyond a reasonable doubt").

Moreover, in *Pruitt* and *Johnson*, the defendant testified, and the factfinder made credibility determinations to buttress its conclusions. Here, Simmons did not testify, and the officer candidly acknowledged Simmons exited the vehicle shortly after he surveilled him, and the officer had no idea when the firearms were placed under the mat. Thus, we conclude that the Commonwealth failed to introduce sufficient evidence to sustain Simmons' conviction because there was "simply . . . no evidence demonstrating that [Simmons] remained in the vehicle for any appreciable length of time beyond that necessary to place his pistol" under the mat. *Pruitt*, 274 Va. at 388. And once Simmons walked away from his vehicle and into the residence, his firearms were "no longer accessible to him so as to afford 'prompt and immediate use.'" *Id.* at 389.

- 11 -

CONCLUSION

For these reasons, Simmons' conviction for violating Code § 18.2-308 is reversed and the charge is dismissed.

*Reversed and final judgment.*